The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) CHAPTER 13 |
| CONNIE L. DOUTT, | ) |
| | ) CASE NO. 08-61191 |
| Debtor. | ) |
| | ) JUDGE RUSS KENDIG |
| | ) |
| | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT FOR PUBLICATION)** |
| | ) |

On September 25, 2009, debtor's counsel, William R. Drown, filed an application for compensation. On November 18, 2009, a hearing was held. Toby L. Rosen and Nancy Ashbrook Willis appeared at the hearing. This matter is now before the Court for decision.

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

# BACKGROUND

On April 16, 2008, debtor filed a Chapter 13 petition. While preparing the petition, debtor's counsel, William R. Drown, met with the debtor on three occasions; reviewed the debtor's pay stubs, tax returns, and real estate documents; prepared Excel spreadsheets; and attended the meeting of creditors. According to Mr. Drown's application for compensation, he billed a total of 8.75 hours for these typical services.

On June 4, 2009, the Chapter 13 Trustee objected to confirmation of debtor's plan. According to the Trustee, the plan was proposed in bad faith under 11 U.S.C. § 1325(a)(3) because it failed to pay the additional income resulting from the surrender of debtor's house to debtor's unsecured creditors. On June 6, 2009, Mr. Drown filed a 13-page response in which he argued that 11 U.S.C. § 707(b)(2)(A)(iii)(I) permits a deduction from current income for payments contractually due to secured creditors regardless of whether the collateral is surrendered. According to the application for compensation, Mr. Drown and Ms. Willis, with whom Mr. Drown is associated in a law firm, spent a total of 12 hours researching and writing this response.

Mr. Drown is seeking a total fee of $3,631.25 for services rendered in this case. $800.00 was paid by the debtor prior to the filing, and Mr. Drown seeks to recover an additional $2,831.25 in fees from the estate.

# LAW AND ANALYSIS

11 U.S.C. § 330 gives this Court the power to monitor the amount of fees paid to debtors' attorneys and to reduce those fees to the extent that they are unreasonable. In the Sixth Circuit, "reasonable compensation" is based on a lodestar calculation which requires a bankruptcy court to "multiply the attorney's reasonable hourly rate by the number of hours reasonably expended." In re Boddy, 950 F.2d 334, 337 (6th Cir. 1991). The Court can then adjust the lodestar amount up or down for reasons including the following 12 factors:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case;
> (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Geier v. Sundquist, 372 F.3d 784, 793 (6th Cir. 2004) (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)); see also Hensley v. Eckerhart, 461 U.S. 424 (1983).

Thus, to determine whether Mr. Drown's fees are reasonable, the Court engages in a three-step analysis. First, the Court determines the reasonable rate due to debtor's counsel. Second, the Court determines the reasonable number of hours expended and multiplies it by the reasonable rate to arrive at the lodestar amount. Third, the Court considers whether special circumstances exist that require modification of the lodestar amount.

### A. Determination of a Reasonable Rate for Services Provided by Debtor's Counsel

Mr. Drown is charging his client $175 per hour. The Court finds this rate to be reasonable. The parties agreed to this rate in writing, and the rate is within the range typically charged by attorneys in this jurisdiction. Therefore, the Court fixes the reasonable hourly amount due to debtor's counsel at $175.

### B. Determining the Reasonable Number of Hours Expended

At the outset, the Court notes that the breakdown of hours in Mr. Drown's application for compensation is not compliant with Federal Rule of Bankruptcy Procedure 2016 and Administrative Order 08-05 as incorporated through Local Rule of Bankruptcy Procedure 2016-1.[1] Rule 2016 requires "a detailed statement of . . . the services rendered, time expended and expenses incurred." Administrative Order 08-05 requires that applications include "at a minimum, as to each activity for which a fee is requested, the identity of the person performing such services, the billing rate for such person, the services performed, the date of the services and the amount of time expended."

Mr. Drown's application violates Rule 2016 and Local Rule 2016-1 by lumping multiple services together into categories labeled by month. The Court also notes that Mr. Drown's application fails to list services "to be provided" to the debtor as required by Rule 2016. As such, the Court cannot award compensation for future services.

Despite these shortcomings, the Court finds the 8.75 hours spent by counsel on typical services related to petition preparation to be reasonable. In reaching this conclusion, the Court notes that the subtotal of $1,531.25 obtained by multiplying 8.75 hours by $175 is close to the $1,500 "no look fee" set by the Court in Administrative Order 08-05, which deals with procedures for allowance of attorney fees in Chapter 13 cases.[2]

---

[1]Local Rule 2016-1 provides that "[c]ompensation of professionals in chapter 13 cases may be governed by administrative orders."

[2]Administrative Memorandum 08-05 sets the "no look fee" at $1,500 for cases in which the payout to unsecured creditors is less than 30% and the total amount paid through the debtor's plan is less than $10,000. Debtor's confirmed plan provides that unsecured creditors will be paid 13% of their total claims and that unsecured creditors will receive a total of $8,400 over 60 months.

On the other hand, the Court finds the 12 hours spent by debtor's attorneys on the response to the Trustee's objection to be unreasonable. The brief spends too much time discussing well-settled law and fails to discuss an important issue of statutory interpretation. As a result, the brief was of little use to the Court and was entirely unsuccessful.

Mr. Drown's brief argues at length that payments due to secured creditors on property that the debtor intends to abandon are deductible for the purpose of calculating disposable income. The minority view of this issue is that the word "scheduled" in 11 U.S.C. § 707(b)(2)(iii)(I) dictates that payments on property to be abandoned are not deductible. *E.g.*, In re Burden, 380 B.R. 194, 200 (Bank. W.D. Mo. 2007). The majority view is that because the means test of Section 707 is a standardized and mechanical test that "avoid[s] reliance on individualized information as much as possible," payments to secured creditors are deductible whether or not the property that secures those payments is abandoned. In re Randle, 358 B.R. 360, 363–64 (Bank. N.D. Ill. 2006).

Mr. Drown points out that courts in the Northern District of Ohio have overwhelmingly adopted the majority view. This Court adopted the majority view in In re Terrell, Case No. 08-60172, Docket No. 94 (Bank. N.D. Ohio 2009) (Kendig, Judge). *See also* In re Ballard, 2008 Bank. LEXIS (Bank. N.D. Ohio 2008) (Kendig, Judge) (discussing the issue and distinguishing a situation in which contractual liability had been merged with a judgment). Six other Courts in this District have reached the same conclusion. In re Townsend, Case No. 07-14987, 2007 Bankr. LEXIS 3791, 5* (Bankr. N.D. Ohio 2007) (listing cases). Mr. Drown should not have required 12 hours to brief such a well-settled issue.

Furthermore, Mr. Drown's brief never reaches the most important legal issue presented by the Trustee's objection, which is the relationship between "disposable income" as calculated under the means test and the requirement of 11 U.S.C. § 1325(b)(1)(B) that a Chapter 13 debtor pay all of his "projected disposable income" to his unsecured creditors.

Courts are split on this issue. Some Courts have found that a debtor's projected disposable income is nothing more than the product of monthly disposable income as calculated by the means test and the number of months in the commitment period. Maney v. Kagenveama (In re Kagenveama), 541 F.3d 868, 871–75 (9th Cir. 2008). Other Courts have treated projected disposable income as independent of disposable income. These Courts define projected disposable income as the amount that the debtor will be able to pay based upon his anticipated future circumstances. After the litigation in this case, the Sixth Circuit Bankruptcy Appeals Panel adopted this more flexible approach. Hildebrand v. Petro (In re Petro), 395 B.R. 369, 373–78 (6th Cir. BAP 2008).

Mr. Drown's brief does not address this split in the case law, and thus ignores the primary issue in this litigation. However, the Court acknowledges that the brief does cite several cases that consider the issue. The Court also notes that the issue explicitly addressed by Mr. Drown would have been relevant to the calculation of debtor's plan payments if the Court had adopted

4

the less flexible definition of projected disposable income. Under these circumstances, the Court feels that 5 hours is a reasonable amount of time to award Mr. Drown for researching and writing his response to the Trustee's objection. Thus, the loadstar amount is $2,406.25, which is calculated by multiplying $175 by 13.75 hours.

### C. Existence of Special Circumstances

In her objection, the Chapter 13 Trustee points out that the attorney fees in this case are equal to approximately half of the amount to be received by unsecured creditors. To the extent that the Trustee's objection raises a special circumstance, the objection is addressed by the reduction in fees from $3,631.25 to $2,406.25. The Court has considered other relevant circumstances in the course of its reasonableness inquiry and does not need to address them further. *See* In re Boddy, 950 F.2d 334, 337 (1991) (finding that special circumstances are often subsumed by the reasonableness inquiry).

Accordingly, compensation of debtor's counsel is set at $2,406.25.

An order will issue simultaneously with this opinion.

#   #   #

**Service List:**

Connie L Doutt
36 Stimens Dr
Mansfield, OH 44907

William Todd Drown
112 N. Main St.
Mt. Vernon, OH 43050

Toby L Rosen
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702